ISAAC EMERSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 16100.    Promulgated May 27, 1949.

*Allan E. Finseth, Esq.*, and *Dennis D. Daly, Esq.*, for the petitioner.
*Thomas A. Steele, Jr., Esq.*, for the respondent.

877

OPINION.

ARUNDELL, *Judge*: The sole issue presented is whether the profit realized by petitioner in 1945 and 1946 from the sale of certain animals from his dairy and hog-breeding herds constituted ordinary income or capital gain under the provisions of section 117 (j) (1) of the Internal Revenue Code.[1]

The precise question here presented was recently decided by the Court of Appeals for the Eighth Circuit in *Albright* v. *United States*, 173 Fed. (2d) 339. The facts in that case were, except for minor details, identical with those presented in the present proceedings. There the taxpayer in 1945 and 1946 sold certain cows from his dairy herd and hogs from his breeding herd, treating the profit from such sales as capital gain. The Commissioner determined

---

[1] SEC. 117. CAPITAL GAINS AND LOSSES.

*          *          *          *          *          *          *

(j) GAINS AND LOSSES FROM INVOLUNTARY CONVERSION AND FROM THE SALE OR EXCHANGE OF CERTAIN PROPERTY USED IN THE TRADE OR BUSINESS.—

(1) DEFINITION OF PROPERTY USED IN THE TRADE OR BUSINESS.—For the purposes of this subsection, the term "property used in the trade or business" means property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (l), held for more than 6 months, and real property used in the trade or business, held for more than 6 months, which is not (A) property of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year, or (B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business.

that the profits from the sales were taxable to the farmer as ordinary income. The Circuit Court stated in regard to the provisions of section 117 (j) :

In order for the taxpayer to come within the provisions of section 117 (j) permitting him to treat the sales from his dairy and breeding herds as sales of capital assets, the burden is upon him to show: (1) that the animals sold were used in his trade or business; (2) were subject to allowance for depreciation; (3) were held for more than six months; (4) were not property of the kind includible in the inventory of the taxpayer if on hand at the close of the taxable year; and (5) that the animals were not held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business.

It is clear that the animals in question were property used in the petitioner's trade or business of farming and that they were property of a character subject to allowance for depreciation. I. T. 3666, C. B. 1944, p. 270.[2] Each of the animals (with the exception of two sows sold in 1945) had been held by petitioner for a period longer than six months. The live stock was not property of the kind includible in the inventory of the taxpayer if on hand at the close of the taxable year. Regulations 111, sec. 29.22 (a)–7;[3] I. T. 3666, supra, p. 270.[4]

Thus, the fundamental issue between the parties centers on the question of whether or not the animals in question were held by petitioner primarily for sale to customers in the ordinary course of his trade or business.

The position of the respondent herein seems to be based on his two rulings published as I. T. 3666, supra, and I. T. 3712 C. B. 1945, p. 176, which rulings it should be noted are not Treasury regulations and, as a consequence, do not have the force and effect that regulations are accorded.

In I. T. 3666, supra, the Commissioner, after recognizing "the inherent character of live stock used for draft, breeding, or dairy purposes as capital assets," held that the "sale of animals culled from

---

[2] * * * It is held that any live stock used for draft, breeding, or dairy purposes, irrespective of whether such live stock was raised or otherwise acquired, is property used in the trade or business, of a character which is subject to the allowance for depreciation, within the meaning of section 117 (j) of the Internal Revenue Code, supra, provided it is held for more than six months,

[3] SEC. 29.22(a)–7. GROSS INCOME OF FARMERS.—

* * * live stock acquired, for draft, breeding, or dairy purposes and not for sale, may be included in the inventory, instead of being treated as capital assets subject to depreciation, provided such practice is followed consistently by the taxpayer.

[4] The above-cited provisions of the regulations and the practice thereunder do not serve to alter the inherent character of live stock used for draft, breeding, or dairy purposes as capital assets subject to the allowance for depreciation, irrespective of whether the farmer has adopted the practice of capitalizing such live stock. The fact that such live stock may be permitted under the regulations to be included in the taxpayer's inventory for the convenience of accounting does not render such live stock "property of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year" so as to deprive the farmer of the benefits of section 117 (a) or section 117 (j) of the Internal Revenue Code.

the breeding herd as feeder or slaughter animals in the regular course of business is not to be treated as the sale of a capital asset." To clarify his position, the Commissioner, in I. T. 3712, *supra*, established a so-called normal-abnormal sales test, holding that if the number of animals sold from the breeding herd during a taxable year exceeded the number of animals added to the breeding herd during the same year, it was to be presumed that the excess number sold consisted of animals held for breeding purposes and that the gain or loss from such sales was subject to treatment as capital gains or losses.

It has been stipulated herein that the petitioner's sales of live stock did not result in a reduction of his cattle and hog herds. Thus, if the Commissioner's rulings are valid, it is plain that the respondent's determination herein is correct.

The Court of Appeals, in *Albright* v. *United States*, *supra*, held that the interpretations upon which the Commissioner relies "are contrary to the plain language of section 117 (j) and to the intent of the Congress expressed in it." In reaching this conclusion the court observed that:

\* \* \* Nothing in the language of the Act indicates an intention on the part of Congress to deny the relief granted by the section to any taxpayers whose transactions meet the prescribed conditions. The Commissioner has ruled that livestock held by a farmer for dairy, breeding, or draft purposes are, while so held and used, depreciable assets, not primarily held for sale to customers in the ordinary course of his business. Nothing in the language of the section justifies the inference that a farmer should be denied the right to treat the profits received from the sales of such livestock when they are no longer profitable or fit for use in the farmer's business as productive of capital gains and not of ordinary income. This, however, is the effect of the ruling relied on by the Government.

We agree with the appellate court that a dairy farmer is not primarily engaged in the sale of beef cattle and the sale by him of some of the stock from his dairy herd is not a sale of property held primarily for sale to customers in the ordinary course of his business.

We also agree with that part of the court's decision wherein it was held that the fact that hogs from the breeding herd were customarily conditioned for market before sale does not show that the taxpayer has not held them for the purpose of breeding or that they were held primarily for sale to customers in the ordinary course of his trade or business.

On the authority of *Albright* v. *United States, supra*, we conclude that the various animals (except for the two sows held less than six months) which were sold by petitioner from his dairy and hog-breeding herds in the years 1945 and 1946 were capital assets within the meaning of section 117 (j) of the Internal Revenue Code and that the profits realized in those years from the sale of such animals are

properly taxable as capital gains and not. as ordinary income. To permit certain adjustments which are conceded by the parties to be necessary to a proper determination of petitioner's tax liability herein,

*Decision will be entered under Rule 50.*

Reviewed by the Court.

---

DISNEY, *J.*, dissenting: I am unable to agree that within section 117 (j) (1) of the Internal Revenue Code sows sold after producing only one litter of pigs were "property used in the trade or business," under the facts in this case. A brood herd is logically property used in the trade or business, but in the case of sows it seems to me peculiarly illogical to conclude, as the majority opinion does, that they are really being held for brood purposes, though the practice was to sell them after only the first litter. My idea of a brood sow is one that will produce large numbers of pigs, and a sow that is sold after the first litter is apparently not such a brood sow. On the contrary, it seems to me that she is "property held by the taxpayer primarily for sale." The facts here indicate to me that the petitioner was holding the sows here involved primarily for sale and not for brood purposes. I, therefore, dissent.

TURNER, *J.*, agrees with this dissent.