Fawn Lake Ranch Company, Petitioner, *v.* Commissioner of
Internal Revenue, Respondent.

Docket No. 11341.   Promulgated June 27, 1949.

*W. C. Fraser, Esq.*, for the petitioner.
*Gene W. Reardon, Esq.*, for the respondent.

OPINION.

LEECH, *Judge*: The only question presented is whether the respondent erred in determining that the gain realized by petitioner in the taxable year 1943 from the sale of certain cattle from its breeding herd was taxable as ordinary gain. Petitioner contends that the sales from its breeding herd are to be treated as sales of capital assets under the provisions of section 117 (j) of the Internal Revenue Code.[1] The respondent relies solely upon two department rulings contained in I. T. 3666 and I. T. 3712, the material parts of which are set forth in the margin.[2] While in I. T. 3666 it is recognized that livestock used for draft, breeding, or dairy purposes is property used in a trade or business of a character subject to depreciation within the meaning of

---

[1] SEC. 117. CAPITAL GAINS AND LOSSES.

\* \* \* \* \* \* \*

(j) GAINS AND LOSSES FROM INVOLUNTARY CONVERSION AND FROM THE SALE OR EXCHANGE OF CERTAIN PROPERTY USED IN THE TRADE OR BUSINESS.—

(1) DEFINITION OF PROPERTY USED IN THE TRADE OR BUSINESS.—For the purposes of this subsection, the term "property used in the trade or business" means property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (1), held for more than 6 months, and real property used in the trade or business, held for more than 6 months, which is not (A) property of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year, or (B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. \* \* \*

(2) GENERAL RULE.—If, during the taxable year, the recognized gains upon sales or exchanges of property used in the trade or business, plus the recognized gains from the compulsory or involuntary conversion (as a result of destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation or the threat or imminence thereof) of property used in the trade or business and capital assets held for more than 6 months into other property or money, exceed the recognized losses from such sales, exchanges, and conversions, such gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than 6 months. \* \* \*

[2] I. T. 3666, reported in 1944 C. B., p. 270, states in part:

"The sale of animals culled from the breeding herd as feeder or slaughter animals in the regular course of business is not to be treated as the sale of a capital asset."

I. T. 3712, reported in 1945 C. B., p. 176, states in part:

"\* \* \* The phrase 'culled from the breeding herd' refers to the normal selection for sale of those animals which, due to injury, age, disease, or for any other reason (other than that of changing the breed or the quality of the offspring) are no longer desired by the livestock raiser for breeding purposes, and also the normal selection for sale of animals for the purpose of maintaining the herd at a regular size. The primary factor is normal practice in the case of the particular taxpayer involved.

"Since in many cases it will be found impractical to determine accurately the number of animals sold from the breeding herd, the following prima facie test is provided for the guidance of livestock raisers. If the number of animals sold from the breeding herd during a taxable year exceeds the number of raised animals added to the breeding herd during the same year, it will be presumed that the excess number sold consisted of animals held for breeding purposes, the gain or loss from which (if held for more than six months) is subject to the provisions of section 117 (j) of the Code. Such sales effect a reduction in the livestock raiser's breeding herd. \* \* \* If the number of raised animals added to the herd is greater than the number of such animals found unfit for breeding purposes and sold during the year, none of the animals sold will be considered capital assets subject to the provisions of section 117 (j) of the Code."

section 117 (j) of the code, if held for more than six months, it provides that "culls" from the breeding herd in the regular course of business are considered to be "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business," and, therefore, the sale of such animals is not to be treated as the sale of a capital asset.

I. T. 3712 amplifies the phrase "culled from the breeding herd" and prescribes a prima facie test. If the number sold from the breeding herd exceeds the number of raised animals added during the same year, it will be presumed that the excess number sold consisted of animals held for breeding purposes and, if held for more than six months, the gain or loss is subject to section 117 (j); but, if the number of raised animals added to the breeding herd is greater than the number sold during the year from the breeding herd, none of the animals sold will be considered capital assets subject to the provisions of section 117 (j).

By letter dated August 4, 1947, the respondent issued a special ruling explaining that:

The prima facie presumption that sales made from the breeding or dairy herd which do not reduce the size of the herd because of addition of raised animals result in ordinary income is always subject to rebuttal and should not be applied arbitrarily. The classification of "culls" was intended to include all animals sold from the breeding herds that represent regular sales made from such source in the ordinary operation of the taxpayer's business.

In the case of *Albright* v. *United States*, 173 Fed. (2d) 339, these departmental rulings were directly involved, and the court concluded that, as applied to the facts there involved, they were "contrary to the plain language of section 117 (j) and to the intent of the Congress expressed in it."

In the *Albright* case, the taxpayer maintained a dairy herd of 36 dairy cattle, of which an average of 18 to 20 head were producers of milk which was sold to local creameries. Calves which were not needed for the maintenance of the dairy herd at the desired number were sold on the market. Dairy cows which, by reason of age, injury or disease, were unfit for use in the dairy herd or which, because of decreased milk production, were economically less desirable for that purpose than available young stock, were sold and replaced by young stock raised by the taxpayer. He regularly maintained also a breeding herd of 10 sows and 1 boar. Each year the taxpayer sold his breeding herd, replacing it with an equal number of young sows raised by him and with another boar purchased from a neighboring farmer. The evidence was that this was the usual practice in the hog-raising industry. During 1945 the taxpayer sold 6 cows, 10 sows, and 1 boar. In 1946 he sold 8 cows, 2 bred heifers, 10 sows, and 1 boar. In his income tax returns the taxpayer treated the amounts received from the

sale of cows removed from the dairy herd and from the sale of his breeding herd of swine as capital gains. The respondent ruled that such sales were productive of ordinary income, and determined deficiencies for each year. The taxpayer paid the deficiencies and sued for a refund. From a judgment in favor of the United States, an appeal was then taken. The Circuit Court reversed, with directions to enter judgment for the taxpayer.

In the instant case the basic operation of petitioner is the raising of cattle. It maintains complete and accurate records. It keeps two basic accounts, separately classifying its breeding cattle and cattle held for sale in the ordinary course of its business. It does not sell heifer calves. A heifer calf born in the spring is valued at the end of the year at a price of $27.50; a yearling heifer is valued at $40, and the increased value is reported as ordinary income. When the heifers are two years old, petitioner selects the better ones to be placed with its breeding herd. Those selected are then transferred from the ordinary cattle account to the breeding cattle account and given a value of $48.50, which value they retain. This $8.50 increase is reported as ordinary income for that year. The remaining heifers not selected for the breeding herd remain in the ordinary cattle account and if sold at a price in excess of the value at which they are then carried, such excess is returned as ordinary income. Because of the various factors which enter into the selection of heifers to be transferred to the breeding herd, and those factors which enter into the determination of the cattle to be sold from the breeding herd, the size of the breeding herd varies from year to year. Some years the breeding herd is reduced and sometimes increased. In the taxable year the number of heifers added to the breeding herd exceeded the number sold therefrom. Because of such circumstances the respondent determined that all the sales from the breeding herd constituted property held by petitioner for sale to customers in the ordinary course of petitioner's business, and that petitioner is not entitled to the benefits of section 117 (j) of the code.

Petitioner contends that when, in the normal course of its business, it transfers the two-year-old heifers into its breeding herd, they are being held for breeding purposes and are to be considered capital assets under the pertinent statute; that, having become part of the breeding herd, they are not held primarily for sale to customers in the ordinary course of business.

In the *Albright* case, *supra*, the Circuit Court said:

Section 117 (j) was intended as a relief measure applicable alike to all taxpayers within its provisions, *Leland Hazard* v. *Commissioner*, 7 T. C. 312. That it was so intended is clearly expressed in the report of the Committees of the House of Representatives and of the Senate in charge of the bill. See H. Rep. No. 2333, 77th Cong., 2d Sess., pp. 53–54 (1942–2 Cum. Bull. 372, 415) and S. Rep.

No. 1631, 77th Cong., 2d Sess., p. 50 (1942–2 Cum. Bull. 504, 545). The section provided an entirely new method of reporting gains and losses on the sale of noncapital assets used in the trade or business of the taxpayer. * * * The Commissioner has ruled that livestock held by a farmer for dairy, breeding, or draft purposes are, while so held and used, depreciable assets, not primarily held for sale to customers in the ordinary course of his business. Nothing in the language of the section justifies the inference that a farmer should be denied the right to treat the profits received from the sale of such livestock when they are no longer profitable or fit for use in the farmer's business as productive of capital gains and not of ordinary income. This, however, is the effect of the ruling relied on by the Government.

It may be argued that in the *Albright* case the taxpayer was on a cash basis, while petitioner actually did, in the tax year, inventory its cattle, and respondent accepted its computation of income on that basis. It inventoried them in two categories—breeding herd and ordinary cattle account. From this premise the contention might be made that, because of the fact that petitioner did inventory its cattle, it is precluded from the benefits of section 117 (j) of the Internal Revenue Code, because of condition (1) (A) in that statute, which bars its benefits in the case of "property of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year." Since cattle held for breeding purposes are treated as property "used in a trade or business," as distinguished from "property held primarily for sale to customers," such cattle, of course, would not ordinarily "properly" be includible in the inventory of the taxpayer. The inclusion of such cattle in inventory has been solely by a ruling of the respondent and then only for convenience in accounting. I. T. 3666, 1944 C. B., p. 270. And that ruling, in order to prevent a farmer who uses the inventory method of accounting and reporting income from thereby losing the benefits of section 117 (j) of the code, included the specific provision that the fact that livestock may be so inventoried "does not render such live stock 'property of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year' so as to deprive the farmer of the benefits of section 117 (a) or section 117 (j) of the Internal Revenue Code."

We conclude on this record that the respondent erred in treating the gain realized by petitioner in the taxable year 1943 from the sale of cattle from its breeding herd as ordinary income. We, therefore, sustain petitioner.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

TURNER, *J.*, dissenting: It is my opinion that the petitioner, by the plain language of section 117 (j), is barred from the relief here sought.

As shown by the findings of fact, the petitioner engaged in the operation of a cattle ranch of approximately 50,000 acres in western Nebraska, and while the facts, as found, do not show the size, or approximate size, of the petitioner's cattle herd, it may be assumed from the size of the ranch itself that the petitioner's cattle ran into numbers so substantial as to make it difficult or impossible to maintain its accounts with respect to the individual animals, as appears to have been done in *Albright* v. *United States*, 173 Fed. (2d) 339.[1]   At any rate, the facts show that the petitioner has regularly and consistently kept its accounts and reported its income by the inventory method and that its breeding herd has consistently been included in that inventory.

The problems of farm and ranch accounting have always been very difficult in that the operations seldom ever lend themselves to the exactness of the accounting methods established and maintained in commercial and industrial enterprises.   To the rancher, the breeding herd is obviously quite comparable to the plant of the industrial concern, and, if such operations were readily susceptible of the methods of accounting applied in industrial concerns, there would appear to be no occasion for using the inventory method of accounting and of reporting income in so far as it relates to the breeding herd.

The Commissioner has been given wide latitude by Congress in determining whether a taxpayer's method of accounting will clearly reflect income and, by section 22 (c) of the Internal Revenue Code, he has been given specific authority to require the use of inventories where necessary clearly to determine the income of the taxpayer, and where so found to be necessary, they are to be taken on the basis which the Commissioner prescribes as conforming as nearly as may be to the best accounting practice in "the trade or business."   The Commissioner's staff and members of the accounting profession occupied with farm and ranch accounting have, over the years, undertaken to devise better methods for farm and ranch accounting, but they have regularly come back to the conclusion that in large operations, such as we have here, some form of inventory accounting is the best available solution, even though the form used be the rather unorthodox farm market method.

When Congress, in enacting section 117 (j), *supra*, involved herein, decided to grant an advantage to taxpayers sustaining losses from the sale of property "used in the trade or business," it did so, with certain limitations and restrictions.   In defining property used "in the trade or business," it specifically excluded "property of a kind which would

---

[1] In the *Albright* case, there is some slight suggestion that the court might have found some difference between the case of a dairy farmer and one engaged in raising and selling beef cattle.

properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year." Some suggestion has been offered that that exclusion from the definition of property used in a trade or business, for the purposes of section 117 (j), does not apply to a breeding herd, because, in logic, a breeding herd being comparable to the plant of an industrial concern, is not property of a kind which would "properly be includible in the inventory of the taxpayer." The simple answer, in my opinion, is that the breeding herd of a rancher is not the plant of an industrial concern and that the regularly accepted method of dealing with a breeding herd in the accounts of ranching operations and the reporting of income therefrom has been by the inventory method. In that situation, I am unable to conclude that Congress did not legislate with regard to existing and established methods of accounting in the various forms of enterprise and that it did not intend to exclude, as property "used in the trade or business," the breeding herd of a ranching operation.

In the circumstances, it does not seem to me that we may say that the petitioner's breeding herd was not properly includible in its inventory. It is accordingly my view that by the interpretation here placed on the definition of property "used in the trade or business," for the purposes of applying section 117 (j), *supra*, we are revising and amending an act of Congress. For that reason, I note my dissent.

DISNEY, *J.*, agrees with this dissent.