WALTER S. FOX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ELEANOR C. FOX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 24454, 24455.   Promulgated April 20, 1951.

*George Craven, Esq.*, for the petitioners.
*George J. LeBlanc, Esq.*, for the respondent.

858

OPINION.

ARUNDELL, *Judge:* The factual question before us is whether the cattle petitioners raised and registered and then sold during the years in question were part of their breeding herd or were held primarily for sale to customers in the ordinary course of business. This question arises from petitioners' contention that the gain on these sales is taxable at capital gains rates pursuant to section 117 (j) [3] of the Internal Revenue Code.

[3] SEC. 117. CAPITAL GAINS AND LOSSES

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

(j) GAINS AND LOSSES FROM INVOLUNTARY CONVERSION AND FROM THE SALE OR EXCHANGE OF CERTAIN PROPERTY USED IN THE TRADE OR BUSINESS.—

(1) DEFINITION OF PROPERTY USED IN THE TRADE OR BUSINESS.—For the purposes of this subsection, the term "property used in the trade or business" means property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (l), held for more than 6 months, &ast; &ast; &ast; which is not (A) property of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year, or (B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. &ast; &ast; &ast;

Section 117 (j) provides for taxing as long term capital gains the net gains on sales of "property used in trade or business" provided, among other things, the property is not property of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business.

It has been held by the United States Court of Appeals for the Fifth and Eighth Circuits, in *United States* v. *Bennett* (C. A. 5, Jan. 8, 1951), and *Albright* v. *United States*, 173 F. 2d 339, and by this Court in such cases as *Isaac Emerson*, 12 T. C. 875, *Fawn Lake Ranch Co.*, 12 T. C. 1139, and *Franklin Flato*, 14 T. C. 1241, that the gain on the sale of cattle from a breeding herd is taxed at capital gains rates pursuant to section 117 (j).

The problem before us is to determine which of the cattle raised, registered and sold by petitioners were part of their breeding herd. Petitioners concede that the unregistered cattle raised and sold by them were not part of their breeding herd.

It was petitioners' practice to register a large number of the cattle raised at the farm. Registration usually occurred before the calf was 6 months old. Petitioners argue that upon registration these cattle automatically became part of their breeding herd despite the fact that the heifers could not be bred until 15 months old and the bulls 13 months old, and despite the further fact that a large part of the animals were regularly sold in the normal course of operations.

Petitioners' contention is based on the theory that if raised cattle may in the future be used in the herd, they qualify as property used in a trade or business just as does machinery or other property which is acquired for use in the operation of a business but is not presently used for that purpose. *Carter-Colton Cigar Co.*, 9 T. C. 219; *Alamo Broadcasting Co.*, 15 T. C. 534. We think the point is without merit for, unlike machinery or other property in those cases, these cattle were not purchased but were born and raised on petitioners' farm. Their presence there does not necessarily evidence an intention to use them in petitioners' business, i. e., to use them for breeding cattle, any more than it necessarily evidences an intention to sell them to customers. Furthermore, these cattle when registered were not ready for use, nor could petitioners then determine that they would be when the proper time arrived. They were, at most, merely potential members of a herd. As we pointed out in our findings, experience has shown that a large number of the cattle were disposed of before they dropped a calf or even were bred.

The mere act of registration does not, in our opinion, establish that the calves became a part of petitioners' breeding herd, for registration was of equal importance in insuring a market for such stock as breed-

ers. The evidence establishes that more bulls were registered than could possibly be used in the herd.

Nor does the fact that an animal was bred establish that it became a part of the breeding herd. Cf. *Leonard C. Kline*, 15 T. C. 998. Petitioners' custom of selling the heifers with calf, and the bulls with the guarantee that they were breeders, necessitated that they be bred once.

We are left with the problem of determining which of the animals were eventually included in the breeding herd. The problem is rendered difficult by petitioners' failure to submit a detailed history of the animals on the basis of which we could make an accurate determination. The only criterion relied on by the petitioners is the fact of registration.

After a careful consideration of the entire record, we have concluded that the heifers raised, registered, and sold by petitioners before they dropped a calf should not be regarded as a part of the breeding herd, and those animals that dropped a calf while still owned by petitioners should be regarded as a part of that herd. Since we are unable to determine from the evidence the exact number of calves in each category, an approximation is necessary.

Inasmuch as the earliest age at which any of the heifers dropped a calf was 24 months and the latest was approximately 27 or 28 months, we adopt as average 26 months and for purposes of disposition of this case treat all females raised, registered, and sold by petitioners when 26 months old or over as having been a part of the breeding herd. The gain on their sale is taxable at capital gains rates. *United States* v. *Bennett, supra; Albright* v. *United States, supra; Isaac Emerson, supra; Fawn Lake Ranch Co., supra,* and *Franklin Flato, supra.* The remainder were not part of the breeding herd but were instead held primarily for sale to customers. The gain on their sale is taxable as ordinary income.

There remains for classification the registered bulls raised by petitioners, i. e., those which may be regarded as a part of the breeding herd and those held primarily for sale to customers. Petitioner William S. Fox's testimony was that, on the average, one bull was sufficient to service 50 females although at times one bull was used to service as few as five. It appears that at the end of the years 1942 through 1945, the breeding herd had only two bulls used as sires and 57 cows. At the end of 1946 when the number of cows reached 80, the herd contained only four bulls used as sires. It also appears that until a bull reached an age of from 32 to 37 months, it could not be satisfactorily determined that it possessed the necessary breeding qualities for such a herd as petitioners were raising. From the record made before us, we have determined that of the registered bulls raised and sold by petitioners, only those 34 months or older should be classified as part

of the breeding herd and those under that age should be classified as property held by petitioners primarily for sale to customers.

The findings of fact set forth a list of the registered cattle sold during the years 1944 through 1946, inclusive, and other information needed to classify them as members of the breeding herd or property held primarily for sale to customers.

The medical expense deductions should be adjusted based on petitioners' income as herein determined. The agreed depreciation will likewise be given effect on final settlement.

*Decisions will be entered under Rule 50.*