G. E. Nance, Lucille Nance v. Commissioner.
G. Nance v. Commissioner
Docket No. 31176.
United States Tax Court
1952 Tax Ct. Memo LEXIS 105; 11 T.C.M. (CCH) 891; T.C.M. (RIA) 52257; August 22, 1952
*105 Arthur Glover, Esq., and Walter G. Russell, Esq., 310 Amarillo Bldg., Amarillo, Texas, for the petitioners. John W. Alexander, Esq., and Paul M. Newton, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: The respondent determined deficiencies in income tax as follows: Year
Deficiency
1947
$2,559.17
1948
4,584.60
The issues presented are whether the gains from sales of a bull, heifers and cows are entitled to the capital gains treatment under section 117 (j), I.R.C. Sales were made in the years 1947 and 1948. Other adjustments were made in the deficiency notice but are not contested by the petitioners. Findings of Fact Some of the facts are stipulated and are so found. Petitioners, husband and wife, reside and operate a ranch about 8 miles east of Canyon, Texas. They filed joint returns for community property income with the collector of internal revenue for the second district of Texas. G. E. Nance will hereinafter be referred to as the petitioner. Petitioner's ranch consisted of approximately 9,025 acres. Since 1931 petitioner has engaged exclusively in the production *106 of registered Hereford cattle. Petitioner was primarily engaged in raising these Herefords for sale to others as breeding stock. From time to time, however, in culling operations he sold on the general market as beef cattle animals which were not desirable for his herd, or animals which had served their useful purpose. An inventory of petitioner's cattle as of November 1947 and December 1948 was as follows: November 25, 1947:
340
Cows 3 to 7 years old (250 calves by
side)
63
Heifers 2 years old
114
Heifers 1 year old
14
Herd Bulls
66
Bulls 2 years old
42
Bulls 1 year old
37
Milk Cows (not registered)
December 9, 1948: 443
Registered Cows, including 109 regis-
tered 2 year old Heifers, 2 to 7 years of
age, and 220 calves
110
Heifers 1 year old
14
Herd Bulls
24
Bulls 2 years old
64
Bulls 1 year old
23
Calves
33
Milk Cows (not registered)
1
Dairy Bull (not registered)
The bulls which petitioner raised were generally sold as yearlings. The heifer calves were weaned at about 8 months of age and then petitioner determined whether he would sell them or keep them. When the heifers were 12 months old, those which were to be added *107 to the breeding herd were separated from the animals held for sale. All calves were registered prior to their attaining the age of 6 months. On May 14, 1947, petitioner sold to L. J. Haile 25 heifers at $400 each and 2 heifers to Haile's daughter at $300 each. All of these animals were registered; they ranged from 13 months to 17 months of age. The animals were outstanding and were part of petitioner's stock in trade. In addition to these heifers, Haile also purchased a bull, Don Lighter, for $1,000. Don Lighter was a raised bull, and was 22 months old at the time of the sale. The heifers purchased by Haile and his daughter had been with this bull. As part of the sales contract petitioner agreed to purchase each of the bull calves dropped by one of these heifers; the agreed price was $200 per bull calf. Again, on December 4, 1947, Haile purchased 16 more of petitioner's raised heifers at $400 each. These animals were part of the same group from which Haile had made his original purchase. At the date of sale these animals ranged from 19 to 30 months of age. Sales of heifers were reported on the 1947 income tax return as a sale of 27 raised, brood cows for $11,600 and the sale *108 of 16 raised, brood cows for $6,400. The gain from these sales was treated as capital gain. No capital gain was claimed on the 1947 return for the sale of the bull. [1]
The sales to Haile and his daughter were made from petitioner's stock in trade and the gain derived therefrom is not entitled to the capital gains treatment of section 117(j). In September 1948 petitioner received a letter from John C. Burns, a cattle broker, inquiring about the possibility of buying 50 top quality registered Hereford yearling heifers. Burns was acting as agent for the Welder Estate. Petitioner's answer to this inquiry was that he had animals of that description and he priced them at $400 each. In October 1948, Burns and another, both buyers for the Welder Estate, inspected the heifers petitioner offered for sale. They were shown some 75 to 100 of these top quality heifers. However, after seeing these animals, the buyers expressed *109 a desire to see petitioner's breeding herd. Petitioner took them to another pasture, hidden from the rest of the ranch, and exhibited a group of very choice bred heifers. Petitioner stated that these heifers were part of his breeding herd, and that he did not intend to sell them. However, the buyers liked this herd of fine animals and insisted that the petitioner state a selling price. Petitioner said that he would accept $750 per heifer, but he refused to sell one of them and reserved it for himself. The buyers accepted petitioner's price and agreed to purchase 49 of the 50 heifers. On October 13, 1948, the heifers purchased by the Welder Estate ranged in age from 20 months to 33 months and petitioner held these animals for more than 6 months. The sale of the 49 heifers was reported on the 1948 return as a sale of 49 raised, brood cows for a total consideration of $36,750. The gain derived from the sale of these 49 heifers may be given the capital gains treatment under the provisions of section 117(j). In addition to the registered Herefords, petitioner had approximately 33 to 37 Holstein cows which were used as nurse cows or foster mothers for the Hereford calves. These cows *110 were a necessary adjunct to petitioner's breeding herd. In 1947 it was necessary to sell some of these cows. Petitioner sold 3 for an aggregate of $127.85 and 3 for an aggregate of $171. Petitioner held these animals for more than 6 months and the aggregate income of $298.85 derived from these sales was subject to the capital gains provision of section 117(j). Opinion We have one basic issue before us, but three situations in which this issue affects petitioner's tax liability. Petitioner contends that the gain derived from sales of certain cattle are within the provisions of section 117(j) of the Code and are entitled to capital gains treatment. Respondent, on the other hand, has determined that the gain resulting from these sales was ordinary income. Section 117(j) provides for taxing as longterm capital gains the net gams on sales of "property used in trade or business" provided, among other things, the property is not property of a kind which would properly be includible in the inventory of the taxpayer if held at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. Congress further *111 provided that livestock, regardless of age, held for breeding purposes at the date of sale, were entitled to capital gains treatment. The court in Albright v. United States, 173 Fed. (2d) 339, 342, determined the applicability of section 117(j) (1) as follows: "In order for the taxpayer to come within the provisions of section 117(j) permitting him to treat the sales from his dairy and breeding herds as sales of capital assets, the burden is upon him to show: (1) that the animals sold were used in his trade or business; (2) were subject to allowance for depreciation; (3) were held for more than six months; (4) were not property of the kind includible in the inventory of the taxpayer if on hand at the close of the taxable year; and (5) that the animals were not held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. * * *" For our present purpose, items (1) "that the animals sold were used in his trade or business", and (5) "that the animals were not held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business" are the controlling factors. The issue is primarily one of fact and *112 we must determine from the record which of the cattle involved in certain sales were sold from petitioner's breeding herd. The record indicates that petitioner's cattle business provided him with four sources of income. The first and the greatest source of income was derived from the sale of cattle which were his stock in trade. His stock in trade was raised, top quality Herefords, both bulls and heifers, which were sold for breeding purposes. A second source of income, although less than the first, was received from the sale of defective animals which were not salable as top quality breeding cattle. As soon as the defect was noted these animals were sold; generally they were sold to packing houses. In addition to his stock in trade, petitioner also maintained an outstanding breeding herd. Income was likewise derived from the sale of cattle from this breeding herd. Finally, income was obtained from the sale of animals which had served their useful purpose. These sales included effete breeding animals and wornout nurse cows. The gain derived from the sale of petitioner's stock in trade was ordinary income as was the gain obtained from the sale of those poor quality animals which *113 had not become part of his breeding herd. Section 117(j); see Laflin v. United States, 100 Fed. Supp. 353. On the other hand, the gain from the sale of the animals from petitioner's breeding herd may qualify for the capital gains treatment, and likewise the gain from the sale of the effete cattle and old nurse cows could be treated in the same manner. United States v. Bennett, 186 Fed. (2d) 407. Our only task is to classify the sales and the gains derived therefrom which come within the provisions of section 117(j). In May 1947 petitioner sold Haile and his daughter 27 heifers for an aggregate of $10,600. Twenty-five of these animals were sold for $400 each, two for $300 each. A bull was also included in this sale for an additional $1,000. Later, in December, Haile purchased 16 additional heifers from the same herd at the $400 price. Petitioner alleges that the bull and all of the heifers were part of his breeding herd. While the records indicate that these animals were outstanding, we can not sustain the petitioner's contention that they were his breeding herd. It was the petitioner's business to sell fine, outstanding cattle; they were his stock in *114 trade and held for sale as such. Petitioner's practice was to separate, for his breeding herd, the best heifers when they were 12 months old. However, even though in excess of 13 months, the heifers bought by Haile were not separted from the herd. This is true for the 27 heifers sold in May as well as the 16 sold six months later, in December. No separation was ever made, except for the sale, and we conclude that these $400 heifers were petitioner's stock in trade. See Fawn Lake Ranch Co., 12 T.C. 1139 (dismissed on appeal, 180 Fed. (2d) 749). By the same token, the evidence supporting the allegation that the bull was part of the breeding herd does not stand the light of scrutiny. We know the bull was outstanding, as were most of petitioner's cattle. We know the bull was 22 months old; we know the bull sold for $1,000; [2] we know that the bull had serviced the heifers purchased by Haile. These facts alone do not prove that Don Lighter was part of petitioner's breeding herd; therefore, we must sustain respondent's determination for these sales to Haile and his daughter. *115 In 1948 petitioner sold 49 heifers to the Welder Estate. The circumstances and the facts surrounding this sale were distinctly different from the sale to Haile. Both sales in the initial stages were alike in that the buyers inspected some of petitioner's fine heifers. However, in the Welder Estate sale the buyers were not entirely satisfied with the first heifers that were offered to them but asked to be shown petitioner's "breeding herd." Petitioner took them to another part of his ranch, and in another pasture he showed them a herd of 50 very fine heifers. They were all bred and were in an advanced state of pregnancy. Petitioner stated that these animals were not for sale. However, upon the buyers' insistence, he set a price of $750 per head upon 49 of these animals, and refused to sell one at any price. The buyers agreed to petitioner's price and purchased the 49 heifers. It appears to us that these 50 heifers were part of the breeding herd at the time of the sale; they were set aside from petitioner's ordinary herd; they were of the finest quality; they had been bred; they were not held for sale in the ordinary course of business. We can only conclude from these facts and the *116 record as a whole that the 49 heifers were held in petitioner's breeding herd at the time of the sale and the gain derived therefrom shall be treated under the provisions of section 117(j). During the years 1947 and 1948 petitioner also received income from the sale of culled cattle. Petitioner alleges that he received $694.90 in 1947 for the sale of old cows and that this gain is subject to the capital gains treatment. Respondent concedes that a gain in the amount of $127.85, which resulted from the sale of three diseased cows, is subject to the provisions of section 117(j), but disallowed the remainder. There is convincing evidence and we find that the gain from the sale of three other cows which sold for an aggregate of $171 is entitled to the benefits of section 117(j). Again, for 1948, petitioner claims that he received $9,313.02 from the sales of culls from his breeding herd and from his nurse cows. In this $9,313.02 worth of sales some 45 animals were sold. From the evidence presented to us it is impossible to ascertain which of these animals were part of petitioner's breeding herd or nurse cows or part of his regular stock in trade but not top quality. We have no breeding *117 list book, no herd book, and no cattle sale and purchase record. Without these records or similar evidence, we are unable to distinguish petitioner's regular stock in trade sales from sales entitled to the benefits of section 117(j). Therefore, except for the two sales in 1947, set forth above, respondent must be sustained. Decision will be entered under Rule 50. Footnotes
1. The 1947 return, Schedule D, indicates that 27 brood cows were sold for $11,600; actually 27 cows and Don Lighter were sold for this price. A breakdown is as follows: ↩
25 cows at $400
$10,000
2 cows at $300
600
1 bull
1,000
Total
$11,600
2. Evidence was introduced that petitioner paid $29,000 for a 5-month-old bull.↩