Ralph Wadley and Ona B. Wadley v. Commissioner.
Wadley v. Commissioner
Docket No. 26694.
United States Tax Court
1952 Tax Ct. Memo LEXIS 37; 11 T.C.M. (CCH) 1126; T.C.M. (RIA) 52328; November 18, 1952
*37 Petitioners raised and registered cattle for developing a breeding herd and sold some during the years 1944, 1945 and 1946 from the farm or at cattle shows. Held, sales to be treated as sales of property used in the taxpayers' business, within Section 117 (j), I.R.C., may be determined in accordance with the case of Walter S. Fox, 16 T.C. 854, affirmed 198 F. 2d 719. Roy Tolleson, Jr., Esq., and Ralph W. Barbier, Esq., for the petitioners. Cyrus A. Neuman, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: Respondent determined deficiencies in income tax for the calendar years 1944, 1945 and 1946 of $11,819.80, $13,126.07 and $7,153.81, respectively. The sole issue is whether certain cattle sold by petitioners in the taxable years were held for breeding purposes or held primarily for sale to customers in the course of the taxpayers' business. The case was submitted upon a partial stipulation of facts, oral testimony and exhibits. The taxpayers filed joint income tax returns with the collector of internal revenue at Detroit, Michigan. Findings of Fact The stipulated *38 facts are found accordingly, and the stipulation is incorporated herein by reference. The petitioners are husband and wife who reside at East Lansing, Michigan. They are owners of Raona Farms which they operate for profit. In the taxable years they operated Raona Farms at a loss and reported such losses on their returns as amounting to $25,117.25, $35,317.28 and $43,144.21 for the years 1944, 1945 and 1946, respectively. Petitioner Ralph Wadley is a physician and surgeon, engaged in the practice of general surgery in Lansing, Michigan. He has been engaged in practice since about 1929. In 1938 the petitioners acquired 200 acres of land northwest of Williamston, Michigan, and commenced operation of Raona Farms. In the taxable years the farm comprised about 690 acres. Petitioners have been and are engaged in raising registered Aberdeen-Angus cattle. In the taxable years the petitioners sold some steers, nurse cows and cross breeds and reported the income from these as ordinary income. They also sold certain of the registered cattle and reported the income from those sales as capital gain. The number of cattle sold and the net profit from such sales are as follows: Registered
Net
Other
Net
Year
Bulls Cows
Profit
Cattle
Income
1944
5 15
$18,292.30
18
$2,969.41
1945
5 18
27,770.49
34
4,576.01
1946
9 10
22,047.08
28
3,434.15
*39 The taxpayers had the purposes of developing a breeding herd of 200 cows, maintaining and improving the herd and the breed and eventually selling the offspring for breeding purposes, thus creating a source of income and occupation in later years. The herd had not reached this size in the taxable years. During these years the petitioners acquired some cattle from sources other than the farm. They bought bulls in order to improve their herd. Every calf born to the registered cows was tattooed for identification and was registered prior to attaining the age of nine months. The heifers were first bred at the age of 14 or 19 months, the bulls generally at the age of 13 or 14 months. Unwanted bulls were sent to market. Younger bulls not meeting the requirements of the petitioners, were steered, fattened and sent to market. Petitioners exhibited cows and bulls from their herd at American Aberdeen-Angus Breeders' Association National Sale and Show in each of the taxable years. They also exhibited cattle at the Michigan Aberdeen-Angus Breeders' Association Sale in each year. The cattle sent to the shows were required to be sold at the show. The petitioners' purpose in exhibiting cattle *40 was a form of advertising to acquaint potential customers with the quality petitioners were breeding. The cattle sent to the shows were not undesirable for the herd. Some cattle were sold from the farm. Some of these were unbred heifers which had reached an age at which it could be determined that they would not improve the herd. They were sold to buyers who wanted ordinary cows to stock their farms. They were not sold at breeders' prices. Some bulls were sold from the farm at breeders' prices to other farms. Petitioners considered these sales were good advertising. Petitioners advertised in the American Aberdeen-Angus Journal, a trade magazine, every month, and occasionally in the Drovers' Journal, a daily paper. Their purpose in advertising was to acquaint people with the product of Raona Farms. The stipulation shows in detail the registration number, sex, date of acquisition and date of sale of each of the registered bulls or heifers sold in the taxable years and said by petitioners to be members of their breeding herd. The petitioners' tax returns which are in evidence reported the gain or loss computed by the petitioners upon these sales. Opinion The problem is to determine *41 which of the cattle raised, registered and sold by the petitioners were part of their breeding herd. The cattle were either property used in the taxpayers' business or property held primarily for sale to customers in the ordinary course of the taxpayers' business. If the latter, the gain upon their sale is ordinary income; if the former, the gain is to be treated as capital gain. The applicable statute is section 117(j) [1] of the Internal Revenue Code. This section was amended by section 324 of the Revenue Act of 1951. As amended, it provides that the term "property used in the trade or business" includes livestock, regardless of age, held by the taxpayer for breeding purposes. The amendment was retroactive to the taxable years and all the cattle here involved were held for the requisite period, in those years, of six months. *42 In Walter S. Fox, 16 T.C. 854, affirmed 198 Fed. (2d) 719, (C.A. 4, July 31, 1952), we considered a similar question involving other breeders of Aberdeen-Angus cattle. We held that the fact of registration was not the sole criterion for determining which of the cattle sold were members of the breeding herd. We concluded that the heifers raised and sold before they dropped a calf should not be regarded as part of the breeding herd, that those which dropped a calf while still owned by the taxpayers should be treated as members of the herd and that only those bulls which were 34 months of age or older when sold should be classified as part of the herd. This decision was rendered prior to the enactment of the Revenue Act of 1951. However, the Fourth Circuit, in affirming the case, stated that the amendment did not affect the reasoning or the conclusions reached by this Court, the controlling factor being the purpose for which the cattle were held. The petitioners here, as in the Fox case, rely heavily on the fact of registration as determining the purpose for which the cattle were held. They contend that all the registered cattle sold in the taxable years *43 were held for breeding purposes. This contention was rejected in the Fox case and cannot be sustained here. The petitioners further say that they desired to build up the herd to a total of 200 breeding cows, that this desired size had not been attained during those years and that until that goal was reached all calves born of the registered cattle should be considered members of the breeding herd. We think this argument is also without merit for the reasons stated in the Fox case by this Court and by the Court of Appeals. The record before us does not show which of the heifers sold had dropped a calf prior to sale. However, it was shown that the heifers were bred by the time they reached the age of 14 to 19 months and in accordance with the rule in the Fox case it may reasonably be assumed that they dropped calves at an average of about 26 months and if sold at that age or later, may be treated as members of the breeding herd. The bulls, under the Fox case rule, may be assumed to have become members of the breeding herd if attaining the age of 34 months prior to sale. The principles of that case should be followed here. Respondent suggests that the petitioners' income tax returns *44 and the stipulation of facts provide the age data necessary for a computation under Rule 50. The tax returns are in evidence and the stipulation gives detailed information on each sale. Accordingly, Decision will be entered under Rule 50. The decision below was vacated and set aside by Order of the Tax Court dated January 23, 1953. It was replaced by 20 TC 1081, dated September 25, 1953. Footnotes
1. Section 117(j), I.R.C., as amended by section 324, Revenue Act of 1951 (j) Gains and Losses from Involuntary Conversion and from the Sale or Exchange of Certain Property Used in the Trade or Business - (1) Definition of property used in the trade or business - For the purposes of this subsection, the term "property used in the trade or business" means * * *. Such term also includes livestock, regardless of age, held by the taxpayer for * * * breeding * * * purposes, and held by him for 12 months or more from the date of acquisition.↩