Donald Bartlett and May Belle Bartlett v. Commissioner.
Bartlett v. Commissioner
Docket No. 53696.
United States Tax Court
T.C. Memo 1955-259; 1955 Tax Ct. Memo LEXIS 79; 14 T.C.M. (CCH) 1031; T.C.M. (RIA) 55259; September 22, 1955
*79 Kenneth F. Edwards, Esq., Greenville, Miss., for the petitioners. George W. Calvert, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: The Commissioner determined deficiencies in petitioners' income tax of $608.20 for 1949 and of $1,917.24 for 1950. The issue is whether gain from the sale of certain cattle is taxable as ordinary income or as capital gain. The Commissioner's deficiency notice states: "It is held that all male cattle under 34 months of age and all female cattle under 26 months of age, sold during the years 1949 and 1950, constitute property held for resale in the ordinary course of business and not part of property held for use in your business as a breeding herd." Findings of Fact The facts stipulated are made a part hereof by this reference. The petitioners, husband and wife, residents of Como, Mississippi, filed their joint returns for 1949 and 1950 with the collector of internal revenue for the district of Mississippi. Petitioner in the singular herein refers to the husband, Donald. Petitioners, in 1949 and 1950, and for some years prior thereto, were the owners and operators of a farm and ranch *80 of 1,440 acres [1] on which they were farming and raising and breeding registered Hereford cattle. Petitioner was an expert cattle man and was a member of the American Hereford Breeders Association. Herefords are a beef-producing breed of cattle. Petitioners began in the registered Hereford cattle breeding business in 1940 by buying 50 head of registered cows and one registered bull. At the end of 1949 they owned 106 cows and 5 bulls, and at the end of 1950, 122 cows and 6 bulls, all registered Herefords. This increase was largely brought about by saving certain animals born on the farm, which petitioners called replacement heifers. Petitioners occasionally bought a few animals to improve blood lines and for cut-cross breeding purposes. Petitioners were trying to improve the quality and increase the number of their breeding herd. All cattle raised on petitioners' farm are registered except a few grade cows that are used to nurse the calf in case its mother *81 dies. They are registered with the American Hereford Association before they are six months of age and are registered with the American Polled Hereford Association after they are six and before they are twelve months of age. Petitioners expect to use practically all female calves born to their herd, and a few of the male calves, as additions to the breeding herd. The balance of the bulls are held for sale to commercial breeders. The animals selected for addition to the breeding herd are selected at weaning time at the ages of 6 to 8 months. These selections are made on the basis of blood lines, the lineage of the cattle, and their physical characteristics. When so selected, these animals are separated from the others and placed in a pasture or lot, the heifers in one group, the bulls in another. Complete records are kept on petitioners' cattle herd. These records include a file on all of the cattle that go into the breeding herd each spring, showing which cows and bulls are put together, the neck chain number, name, and date of birth, together with a record of calves born. The rules of the American Hereford Breeders Association provide that if a bull is bred before it is 12 months *82 of age or a heifer is bred before it is 15 months of age, the offspring cannot be registered. Petitioners begin breeding bulls at from 12 to 15 months of age, and females at from 15 to 20 months of age. About fifty per cent of the calves born on the farm are male and fifty per cent female, with the odds slightly in favor of male births. In 1949 there were 36 bulls and 48 heifers born on the farm and in 1950 there were 41 bulls and 35 heifers born. In 1949 and 1950 the petitioners devoted about 400 acres of their land to the raising of crops. They had about 420 acres fenced in as pasture land. Petitioners figure it takes 2 1/2 to 3 acres of pasture for each cow and her calf. In the deficiency notice for 1949 the Commissioner determined that 27 head of cattle sold at a net sale price of $12,190.71 in 1949 and reported as capital gain on petitioners' 1949 return should have been reported as ordinary income. One of the 27 head was a male, aged 8 months at date of sale, and the remaining 26 head were all females, their ages at date of sale ranging from 7 months to 17 months, as follows: 2 at 7 months, 4 at 8 months, 8 at 12 months, 2 at 13 months, 3 at 14 months, 3 at 15 months, 3 *83 at 16 months and 1 at 17 months. A detailed list of the 27 head is contained in Exhibit 3 of the stipulation of facts, wherein is given the sex of each, the tattoo number assigned to each animal and the net sales price received for each. All of the 27 head were raised on petitioners' farm and held for more than 6 months. In the deficiency notice for 1950 the Commissioner determined that 61 head of cattle sold at a net sale price of $29,591.83 in 1950 and reported as capital gain on petitioners' 1950 return should have been reported as ordinary income. The petitioners concede that the respondent's action was correct except for the sale of 33 head of cattle, consisting of 2 bulls and 31 heifers, sold in 1950 for a total net sale price of $19,092.90. As to these 33 head petitioners contend that these were sales of capital assets. Of these 33 head, 2 were bulls aged 13 and 17 months, respectively, at date of sale, and the remaining 31 were heifers, their ages at date of sale ranging from 6 months to 22 months, as follows: 1 at 6 months, 2 at 7 months, 2 at 8 months, 5 at 9 months, 3 at 10 months, 3 at 11 months, 2 at 12 months, 3 at 13 months, 3 at 14 months, 1 at 16 months, 2 at 17 *84 months and 1 at 22 months. A detailed list of the 33 head is contained in Exhibit 4 of the stipulation of facts, wherein is given the sex of each, the tattoo number assigned to each animal and the net sales price received for each. All of the 33 head were raised on petitioners' farm and were held more than six months, except one, which was 6 months old when sold, being "tattoo number" 493, and sold for $529.72. All of the 27 animals sold in 1949 and listed in Exhibit 3, and all of the 33 sold in 1950 and listed in Exhibit 4 had, prior to the sales, been selected by petitioners as replacements or additions to their breeding herd and made a part thereof, and ordinarily would not have been sold, but in 1949 and 1950 petitioners were in need of funds for farm and ranch expansion and improvement and this unusual requirement caused petitioners to make these sales. At the end of each of the years indicated the petitioners owned registered Hereford cows and bulls as follows: *
Number
Year
Cows
Bulls
1946
123
6
1947
76
4
1948
97
4
1949
106
5
1950
122
6
1951
116
6
1952
138
6
*85 Footnotes
1. 500 acres of this land was unfenced and not in use. 300 additional head of cattle will be required to stock this 500 acres and petitioners expect to stock it as rapidly as they can save replacement heifers and breed them.↩
*. This paragraph was added by an official Tax Court Order Opinion The sole question here is whether the petitioners are entitled to treat the sales of certain registered Hereford cattle in 1949 and 1950 as property used in their trade or business. If such cattle were held by the petitioners as breeding cattle, then, under the provisions of section 117(j)(1) of the Internal Revenue Code of 1939, as retroactively amended by section 324 of the Revenue Act of 1951, the petitioners are entitled to treat their profits from the sales as gain from the sale of capital assets and not as ordinary income. It is now firmly established that cattle held for breeding purposes come within the definition of the term property used in a trade or business and qualify under section 117(j)(1) of the Internal Revenue Code of 1939 for treatment as capital assets, provided they are held for the requisite period. Even before the 1951 amendment, courts and the Commissioner had recognized this. Estate of C. A. Smith, 23 T.C. 690; Fawn Lake Ranch Co., 12 T.C. 1139; Franklin Flato, 14 T.C. 1241; Albright v. United States, 173 Fed. (2d) 339; I.T. 3666, 1944 C.B. 270; I.T. 3712, 1945 C.B. 176. Whether the particular cattle here, the sales of which are in question, were held by petitioners for breeding purposes is one of fact to be determined from the evidence. Respondent seeks to arbitrarily settle this question of fact by holding that all male cattle under 34 months of age and all female cattle under 26 months of age cannot be so classified. This he cannot do. He sought so to do in Estate of C. A. Smith, supra, and in James McDonald, 23 T.C. 1039 (filed March 31, 1955) in both of which we decided adversely to his contention. Furthermore, under the facts in each of them we sustained the taxpayer's contention that the gain from the sale of the cattle was capital gain and not ordinary income, although the ages of most of the animals there were younger than the age prescribed by the Commissioner. The material facts here are essentially the same as those in the Smith case, supra. In both cases the cattle in question had been selected for breeding purposes and separated from the others, and would not have been sold except for unusual circumstances. From all the evidence and the record as a whole in the instant case, we are convinced that the animals in question were actually part of petitioners' breeding herd at the time of their disposition, and that they were being held for breeding purposes and not held primarily for sale in the ordinary course of the petitioners' business. Consequently, the petitioners are entitled to treat their gains on the sales of all these animals in dispute as long-term capital gains, except as to one head sold in 1950 for $529.72, the age of which at sale was six months and consequently was not held for "more than six months." [Italics supplied]. Decision will be entered under Rule 50. ↩