James R. Baer v. Commissioner. Vera I. Baer v. Commissioner.
Baer v. Commissioner
Docket Nos. 29094, 29095.
United States Tax Court
1952 Tax Ct. Memo LEXIS 207; 11 T.C.M. (CCH) 520; T.C.M. (RIA) 52155; May 26, 1952
*207 Herbert C. Hirschboeck, Esq., 735 N. Water St., Milwaukee, Wis., and Charles E. Prieve, Esq., for the petitioners. Julian L. Berman, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner has determined deficiencies as follows: Year
James R. Baer
Vera I. Baer
1943
$ 481.92
1944
7,723.78
$ 1,855.71
1945
17,134.85
9,836.99
1946
14,981.84
11,571.04 The issues for decision are (1) whether one-half of income from interest, rental and sales of jointly owned properties was taxable to Vera, and (2) whether properties which the petitioners had rented for more than six months were held by them for investment and rental and were not "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business" so that gains from the sales thereof were gains from sales of capital assets held for more than six months. Findings of Fact The petitioners are husband and wife residing at Wauwatosa, Wisconsin. Their returns for the taxable years involved were filed with the collector of internal revenue for the District of Wisconsin. James was regularly and continuously engaged *208 at all times material hereto in the business of building houses, including the building of houses for others and the building of houses on properties standing in the name of his wife or in their joint names. Many of the houses built on land in the name of one or both of the petitioners were built and, until actual sale, were held primarily for sale to customers in the ordinary course of the construction business. His intention, with regard to a number of the houses which he built, was from the very beginning to sell them as soon as possible even though he might rent a few of them for a short time before he sold them. Vera actively participated and helped James in several phases of his business. They had a joint bank account during the taxable years in which they deposited proceeds of sales and from which they withdrew money in order to purchase new lots, to build new houses, and for other purposes. Title to most of the lots purchased as building sites was taken in the joint names of the two petitioners, but the title to some tax delinquent lots bought with joint funds from the taxing authorities, was taken in the name of Vera so that James could receive a broker's commission on the *209 sale. The petitioners retained as investments some of the properties owned by them on which James had constructed houses. They held as many properties for investment as their financial condition and the demands of their construction business permitted. Their primary purpose in retaining houses for investment was to receive the rents from those properties. They did not advertise those properties for sale, they placed longterm mortgages on them, and they rented them until the petitioners no longer deemed the properties desirable as investments, until they were replaced by more desirable properties, or until they had to be sold to provide additional funds for the business. All of the properties listed in Exhibit 1-A of the stipulation of facts were held primarily as investments in order to obtain rental income from those properties. They were not held primarily for sale to customers in the ordinary course of the construction business. Vera did not file any income tax returns for 1942 and 1943 but James reported the income of both in his returns for those years. The petitioners filed separate returns for the years 1944, 1945 and 1946. The Commissioner, in determining the deficiencies, *210 held as to each petitioner that the gains realized on all sales of improved real estate were ordinary income taxable in full because that real estate was property held primarily for sale to customers in the ordinary course of a trade or business and was not property used in a trade or business as defined in section 117(j) of the Internal Revenue Code. He also held in determining the deficiencies against James that income derived by him from sales and from rent with respect to houses constructed by him were taxable in their entirety to him and no part thereof was taxable to his wife on the basis of joint tenancies. He held in determining the deficiencies against Vera that income from sales and rent with respect to houses constructed on lots in her name were taxable in their entirety to her and one-half of the gains and rental income with respect to houses constructed on lots held in joint tenancy by Vera and her husband was taxable to Vera. The facts stipulated by the parties, together with all joint exhibits, are incorporated herein by this reference. Opinion MURDOCK, Judge: The Commissioner has taxed all of the income from interest, rental and sales of *211 property in the joint names of the petitioners or in the separate name of Vera, to James for all years and has also taxed one-half of that income from jointly held property and all of that income from property in the separate name of Vera, to Vera for the years for which she filed returns. He concedes that there is duplication which will be corrected when this Court decides how much of the income for each of the last three years is taxable to each. The petitioners contend that all of that income is taxable one-half to each, including that from the rental or sale of property standing in Vera's name, since that property, like all the rest, had been bought with joint funds and belonged to them jointly. The Commissioner, in failing to tax only one-half of this income to each of the petitioners, has gone contrary to his own ruling in I.T. 3754, 1945 C.B. 143, and to a number of court decisions, including Paul G. Greene, 7 T.C. 142, Edwin F. Sandberg, 8 T.C. 423, as to both of which he acquiesced. He has not mentioned or distinguished those cases upon which the petitioners rely. It is held, upon authority of the two cases cited and others cited in those *212 cases, that each petitioner is taxable with one-half of the income from rental and sales of properties and with one-half of the interest paid by debtors Barndt and Pahl for the years in which separate returns were filed. The record does not contain sufficient evidence in regard to other interest received or in regard to refunds to enable the Court to make any decision as to those items. James concedes that he was regularly and continuously engaged during the taxable years in the business of building and selling speculative houses and he held many such properties for sale to customers in the ordinary course of that business. His intention, with regard to some of the houses which he built, was, from the very beginning, to sell them even though he might rent them for a short time before he sold them. All parties agree that the profits from the sale of those houses represented ordinary income. The petitioners contend, however, that they retained other houses for investment purposes in order to obtain income from renting those properties, whereas the Commissioner contends that all of the houses built by James on land in the name of Vera or in their joint names were held primarily for *213 sale to customers in the ordinary course of the construction business. It is possible for a taxpayer regularly engaged in the business of selling real estate owned by him to hold some of it for the benefits to be derived from renting it, so that while it is held as an investment, it is not held primarily for sale to customers in the ordinary course of business within the meaning of section 117 (j) of the Internal Revenue Code. Nelson A. Farry, 13 T.C. 8. The only question to be decided under this issue is one of fact, whether the properties in question were held primarily as an investment or whether they were held primarily for sale to customers in the ordinary course of the construction business within the meaning of section 117 (j). There is at least a fair preponderance of the evidence in favor of the petitioners' contention on this point. It would make no difference whether the builder was not allowed to sell because of some government restriction, and had to rent, or whether he merely chose to rent, so long as his primary purpose in holding the property was not to sell it in the ordinary course of his construction business. The petitioners, during the taxpayer *214 years, held and rented many properties, each for a substantial number of months, and derived a large amount of income by that method. James testified that the investment properties were distinguishable from the sale properties in that he refrained from putting "for sale" signs on the investment properties, he never advertised them for sale, and he put long-term mortgages on them. He did not distinguish the two types of properties in his accounts as well as he might have and thereby deprived himself of some helpful proof, but his method of accounting is not determinative of the issue. The evidence shows that there was a great demand during this period for unoccupied houses which could be occupied immediately by the purchaser, whereas there were few purchasers for occupied houses. James knew the situation thoroughly and would not have rented these houses had his primary purpose been to sell them as fast as he could. The periods during which they were rented were sometimes relatively short but long enough for present purposes. Cf. Isaac Emerson, 12 T.C. 875. Eventually, he sold them and thus raised the present issue. His reasons for selling the houses are varied and leave *215 room for some doubt as to his purpose in holding them but it is fair to conclude from all of the evidence that he did not sell them in the ordinary course of his construction business. Some, he said, were not well located so he sold them and invested the proceeds in constructing houses in a better neighborhood. Houses which were poorly planned he sold to enable him to build others better planned. The houses were cheaply constructed and maintenance costs increased sharply after they had been rented from three to five years and for that reason he sold the older properties and took new ones into his investment account. Some were furnished with poor war-time materials and he sold those after restrictions permitted construction with better materials. Single and two-family properties were sold and replaced in the investment account with multi-family buildings which produced better net rentals. Units, limited to low rentals were sold in order to replace them with others for which higher rentals were permitted. The investment in rental houses continued after restrictions were removed. A finding has been made that the gains upon the sales of properties rented for more than six months were gains *216 from sales of properties used by the petitioners in their rental business which were held primarily for production of rental income and were not held primarily for sale in the ordinary course of the construction business. Decisions will be entered under Rule 50.