Clement F. COOK, Plaintiff,

v.

UNITED STATES of America, Defendant.

Wilfred L. COOK, Plaintiff,

v.

UNITED STATES of America, Defendant.

Wilfred L. COOK and Patricia Cook, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Nos. 3–57–35 to 3–57–37.

United States District Court
D. Minnesota,
Third Division.
Aug. 22, 1958.

Joseph A. Maun, Jerome B. Simon and Burton G. Weisberg, St. Paul, Minn.

(Bundlie, Kelley & Maun, St. Paul, Minn., of counsel), for plaintiffs.

Charles K. Rice, Asst. Atty. Gen., James P. Garland, Lyle M. Turner and Sheldon J. Gitelman, Washington, D. C., by Sheldon J. Gitelman, George E. Mac-Kinnon, U. S. Atty., St. Paul, Minn., for defendant.

DONOVAN, District Judge.

These three cases, consolidated for trial, were brought by plaintiffs to recover a refund of federal income taxes. Defendant admits payment of the taxes and seasonable claim for refund in each case.

Most of the facts are undisputed and a general statement thereof will be made as applicable in each case.

Clement F. Cook and Wilfred L. Cook, during all times material herein, were partners in the business of operating a mink ranch at St. Peter, Minnesota. Patricia Cook's interest is by reason of her having filed a joint return with her husband, Wilfred L. Cook, for one of the years involved. All three will be referred to as plaintiffs.

Plaintiffs and the partnership reported their income on a cash basis and filed their returns with the Collector in Minnesota. The partnership business consisted of breeding and raising mink for the purpose of selling their pelts. The business required development of a breeding herd in order to obtain improved strains of mink. This necessitated culling of certain breeders from the herd. The culled breeders were maintained in separate pens until late November or early December, when their fur was in prime condition, at which time they were killed and pelted. The cured pelts were disposed of in the same manner as pelts taken from mink raised primarily for their fur.

The partnership reported the money received from the sale of the pelts of the culled breeders in 1951 and 1952 as proceeds from the sale of "property used in the trade or business", within the meaning of section 117(j)(1) of the Internal

Revenue Code,[1] entitled to capital gains treatment. The plaintiffs so reported this income.

Defendant determined that these proceeds were ordinary income and assessed deficiencies against the plaintiffs for the taxable years 1951 and 1952. Defendant admits that the culled breeders met all the requirements of section 117(j)(1) for property used in the trade or business, and that had the culls been sold live, the proceeds of the sale could have been given capital gains treatment, but contends that when the culled animals were killed and pelted, the pelts lost their character as "property used in the trade or business", as provided in said section 117(j) (1). Plaintiffs contend that the killing and pelting here in question were necessary steps in the process of conditioning the subject matter of the tax for market, and hence the sale of the pelts does not alter the fact that said mink were breeding stock, within the definition of said section 117(j)(1).

In support of its ruling, defendant contends: First, the partnership business was the raising of mink for sale of their pelts. The pelts of the culled mink are, consequently, property properly includible in inventory if held at the close of the tax year, and property held primarily for sale to customers in the ordinary course of business. Second, the pelts of culled breeder mink are not "livestock held by the taxpayer for draft, breeding, or dairy purposes."[2]

■■■ The first argument has been made in other cases where the taxpayer attempted to qualify as property used in the trade or business, property of the same kind sold by the taxpayer in his normal trade or business. In each case the determination of whether the property used in the trade or business qualified as section 117(j)(1) property turned not on the nature of the property itself, but rather the purpose for which it was held.[3] It is undisputed here that the breeder mink were held primarily for use in the business. In such a situation the

1. Internal Revenue Code, 1939, 26 U.S. C.A. § 117(j) (1), provides:
 "For the purposes of this subsection, the term 'property used in the trade or business' means property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23(l), held for more than 6 months, and real property used in the trade or business, held for more than 6 months, which is not (A) property of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year, or (B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business * * *. Such term also includes livestock, regardless of age, held by the taxpayer for draft, breeding, or dairy purposes, and held by him for 12 months or more from the date of acquisition."

2. After commencement of these actions, Revenue Ruling 57–548 was promulgated. The Ruling states the defendant's position in this language:
 "Section 1.1231–2 of the Income Tax Regulations provides that for purposes of section 1231 of the Code [section 117 (j) (1)], the term 'livestock' shall be given a broad, rather than a narrow interpretation and includes cattle, hogs, horses, mules, donkeys, sheep, goats, fur bearing animals, and other mammals. Under the broad interpretation of 'livestock', the mink under consideration, as well as other fur bearing animals, are property used in the trade or business for the purposes of section 1231 of the Code, provided they are held by the taxpayer for breeding purposes and are held for 12 months or more from the date of acquisition.
 "However, when animals are periodically taken from the breeding herd and killed for their pelts, the character of the animals has been changed. They are no longer of the type specified for possible capital gain treatment under section 1231 of the Code and the pelts therefrom constitute property of a kind which would properly be includible in inventory if on hand at the close of the taxable year or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, as is the case where such animals are raised for their pelts, i. e., not for breeding. * * *"

3. Albright v. United States, 8 Cir., 173 F.2d 339; Latimer-Looney Chevrolet, Inc., 19 T.C. 120, 125, and cases cited.

fact that the property was conditioned for sale and sold in common with property held primarily for sale in the ordinary course of business is immaterial.[4] It follows, then, that the plaintiffs were entitled to capital gain treatment on the proceeds of the sale of the pelts of the culled mink breeders. Defendant further contends, however, that the pelts of the culled mink breeders do not retain the character of section 117(j)(1) property.

■ The evidence establishes that sound business practice requires the culling of large numbers of mink from the breeding herd each year, and that the only appreciable market for these culls is the pelt market. In order that the culls be put in a marketable condition they must be killed and pelted. Yet, the defendant maintains in so rendering the animal what was admittedly section 117(j)(1) property becomes something else.[5] Defendant's construction of the statute, in which he draws support from Revenue Ruling 57–548, penalizes sound business methods by ignoring the economic realities of the mink farming industry. Resort to the statute must be had to see whether it requires this result.

■ Section 117(j)(1) is a relief measure available to all taxpayers whose transactions meet the prescribed conditions. The statute is not ambiguous; the congressional intent is clear; and rulings of the Treasury Department which purport to construe the statute are to be disregarded when their effect is to deny capital gains treatment to a taxpayer otherwise within the statute.[6] The 1951 amendment which specifically includes "livestock * * * held by the taxpayer for draft, breeding, or dairy purposes" in the definition of "property used in the trade or business" was enacted to remove "uncertainties" in the application of the statute to livestock used in the trade or business created by rulings of the Treasury Department. The legislative history of the amendment indicates congressional approval of the Albright decision. The history further shows that the term "livestock" is to be given a broad and not a narrow construction.[7]

■ It is undisputed that the culled breeder mink here involved meet all the conditions imposed by section 117(j)(1). Defendant's construction of the statute, in effect, adds thereto the further condition that the property be sold in the same form as that in which it was held by the taxpayer. Nothing in the statute permits such inference unless it is the word "livestock" itself. Yet the history of the amendment shows that it was not intended to restrict the ambit of the existing statute, but to remove restrictions in its application resulting from Treasury Department rulings.

The court concludes that defendant's determination that the proceeds of the sale of the pelts of the culled breeder

4. Ibid. See also United States v. Bennett, 5 Cir., 186 F.2d 407; Retz v. Birmingham, D.C.Iowa, 98 F.Supp. 322.

5. Defendant sees as analogous the situation of a farmer raising livestock for sale as slaughter animals, who engages in the activity of slaughtering his culled breeders and selling the dressed carcasses. Where the slaughter is done for a fee, the proceeds of the sale of the dressed carcasses are not entitled to capital gains treatment. Kahua Ranch v. United States, D.C.Hawaii, 165 F.Supp. 210. The analogy fails, since the existence of independent slaughter-houses in the meat industry provides a market for live slaughter animals which does not exist in the mink industry. The practice of selling animals to such middlemen is so universal in the meat industry, that a farmer who engages in this part of the business may well be held to be engaging in a separate business from that of raising the animals for sale in which business the culled animals could be found to be *property held primarily for sale to customers in the normal course of trade or business.*

6. Albright v. United States, supra.

7. H.Rep. No. 585, 82nd Cong., 1st Sess., Vol. 2, U.S.Cong. & Adm.Serv., p. 1813; S.Rep. No. 781, 82nd Cong., 1st Sess., Vol. 2, U.S.Cong. & Adm.Serv., pp. 2011, 2012.

mink were ordinary income had no foundation in law, in that it was based upon a determination which in itself, and in its operative effect, was unreasonable and unsound, and contrary to the intent, purpose and requirements of section 117 (j)(1) of the Internal Revenue Act of 1939.

It is so ordered.

Plaintiffs may submit findings of fact, conclusions of law, order for, and form of judgment consistent with the foregoing.

Defendant is allowed an exception.