BEN EDWARDS AND EVELYN EDWARDS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

VERNON WORDEN AND HILMA WORDEN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

CARL W. SCHMIDT AND VERNA SCHMIDT, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 66094, 68307, 68661. Filed June 18, 1959.

*L. H. Mikeworth, Esq.,* for the petitioners in Docket Nos. 66094, 68307 and *A. H. Michals, Esq.,* for the petitioners in Docket No. 68661.

*Donald W. Wolf, Esq.,* for the respondent in Docket Nos. 66094, 68661 and *Richard G. Worden, Esq.,* for the respondent in Docket No. 68307.

OPINION.

TURNER, *Judge:* Since the tax years in these proceedings include 1951 through 1955, the applicable sections of the Internal Revenue Code of 1939 and 1954 are 117(j) [1] and 1231, respectively, and they are in substance the same with respect to the issue common to and presented in each proceeding. The question to be determined is whether the gain from the sale of the pelts of culled breeder mink is entitled to the capital gains treatment.

The identical question was presented in *Cook v. United States*, 165 F. Supp. 212. There the facts were very much like the facts presented in these proceedings. The ranchers' business consisted of breeding and raising mink for the purpose of selling pelts; the business required development of a breeding herd in order to obtain improved strains of mink; this necessitated culling of certain breeders from the herd; the culled breeders were maintained in separate pens until late November or early December, when their fur was in prime condition, at which time they were killed and pelted; and the cured pelts were disposed of in the same manner as pelts taken from mink raised primarily for their fur.

---

[1] SEC. 117. CAPITAL GAINS AND LOSSES.

(j) GAINS AND LOSSES FROM INVOLUNTARY CONVERSION AND FROM THE SALE OR EXCHANGE OF CERTAIN PROPERTY USED IN THE TRADE OR BUSINESS.—

(1) DEFINITION OF PROPERTY USED IN THE TRADE OR BUSINESS.—For the purposes of this subsection, the term "property used in the trade or business" means property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23(1), held for more than 6 months, and real property used in the trade or business, held for more than 6 months, which is not (A) property of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year, or (B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, * * *. Such term also includes livestock, regardless of age, held by the taxpayer for draft, breeding, or dairy purposes, and held by him for 12 months or more from the date of acquisition. * * *

(2) GENERAL RULE.—If, during the taxable year, the recognized gains upon sales or exchanges of property used in the trade or business, * * * exceed the recognized losses from such sales, exchanges, and conversions, such gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than 6 months. * * *

There, as here, the Government admitted that the culled breeders met all the requirements of the statute for property used in the trade or business and that had the culls been sold live, the proceeds of the sale could have been given capital gains treatment. It contended, as respondent contends here, that when the culled animals were killed and pelted the pelts lost their character as "property used in the trade or business," as provided by the applicable statute. The taxpayer, as the petitioners claim here, contended that the killing and pelting of the culled breeders were necessary steps in the process of conditioning their pelts for market and hence the sale of the pelts did not alter the fact that the culled mink were breeding stock within the definition of the statute.

The same contentions presented by respondent here were presented there by the Government and they are first, the business of the mink rancher was the raising of mink for the sale of their pelts; the pelts of the culled mink are, consequently, property includible in inventory if held at the close of the tax year, and property held primarily for sale to customers in the ordinary course of business; and second, the pelts of culled breeder mink are not "livestock held by the taxpayer for draft, breeding, or dairy purposes."

The court rejected those contentions and held for the taxpayer. Respondent argues that the decision is erroneous and should not be followed; that it is contrary to Revenue Ruling 57–548,[2] 1957–2 C.B. 54, which is respondent's interpretation of section 1.1231–2 of the Income Tax Regulations, as of December 31, 1957, which is relative to section 1231 of the 1954 Code; that the decision is based primarily on *Albright* v. *United States*, 173 F. 2d. 339, which is distinguishable in that the animals culled from the dairy herd were sold live; and that "livestock," though expanded by the regulations (T.D. 6253) to include fur-bearing mink, is not to be expanded to include mink pelts. He also refers to *Kahua Ranch, Ltd.* v. *United States*, 165 F. Supp. 210, where the taxpayer, in the business of selling meat at Kohala, Hawaii, made sales of culls from its breeding herd to retailers, slaughtered the animals for them, retaining the hides for such service, and

---

[2] Rev. Rul. 57–548:

Section 1.1231–2 of the Income Tax Regulations provides that for the purposes of section 1231 of the Code, the term "livestock" shall be given a broad, rather than a narrow interpretation and includes cattle, hogs, horses, mules, donkeys, sheep, goats, fur bearing animals, and other mammals. Under the broad interpretation of "livestock", the mink under consideration, as well as other fur bearing animals, are property used in the trade or business for the purposes of section 1231 of the Code, provided they are held by the taxpayer for breeding purposes and are held for 12 months or more from the date of acquisition.

However, when animals are periodically taken from the breeding herd and killed for their pelts, the character of the animals has been changed. They are no longer of the type specified for possible capital gain treatment under section 1231 of the Code and the pelts therefrom constitute property of a kind which would properly be includible in inventory if on hand at the close of the taxable year or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, as is the case where such animals are raised for their pelts, *i.e.*, not for breeding.

upon delivery of the meat billed the purchaser according to the dressed weight of the carcass; but it shipped other culls to another of its ranches on the island of Oahu where it slaughtered the culls, stored the meat in its icehouse, and upon demand sold the carcasses to retailers (butchers) in Honolulu, the court holding that the proceeds from the sale of the meat under the circumstances first described constituted capital gains while in the second instance the proceeds were ordinary income. Respondent sees in the second instance an analogy with the instant proceedings, and objects to the distinction the District Court made between the two businesses.

In *Cook* v. *United States, supra*, the court stated that "[t]he analogy fails, since the existence of independent slaughter-houses in the meat industry provides a market for live slaughter animals which does not exist in the mink industry. The practice of selling animals to such middlemen is so universal in the meat industry, that a farmer who engages in this part of the business may well be held to be engaging in a separate business from that of raising the animals for sale in which business the culled animals could be found to be property held primarily for sale to customers in the normal course of trade or business."

We are of the opinion that the reasoning of the court in the *Cook* case is sound.

As shown by the court, respondent's first argument was presented in other cases where the taxpayer attempted to qualify as property used in the trade or business, property of the same kind sold by the taxpayer in his normal trade or business. See *Carl Marks & Co.*, 12 T.C. 1196 (securities); *United States* v. *Bennett*, 186 F. 2d 407 (livestock); *Nelson A. Farry*, 13 T.C. 8 (housing); *A. Benetti Novelty Co.*, 13 T.C. 1072 (slot machines). As stated by this Court in *Latimer-Looney Chevrolet, Inc.*, 19 T.C. 120 (company or demonstrator cars), at page 125, "These cases point out that it is not the nature of the property itself which is determinative of [the] case but rather the purpose for which the property is held." It was so held also in *Albright* v. *United States, supra*, where the court held that section 117(j)(1) was applicable to the sale of culls from a dairy herd though respondent argued to the contrary.

In each of the instant proceedings it is undisputed that the breeder mink were held primarily for use in the rancher's business. That the breeders' pelts were conditioned for sale and sold in common with the other pelts held primarily for sale in the ordinary course of business is immaterial. *Cook* v. *United States, supra, Albright* v. *United States, supra, Latimer-Looney Chevrolet, Inc., supra, United States* v. *Bennett, supra*. See also *Retz* v. *Birmingham*, 98 F. Supp. 322 (sows and cows); *Isaac Emerson*, 12 T.C. 875 (dairy- and hog-breeding herds); *Fawn Lake Ranch Co.*, 12 T.C. 1139 (breeding cattle).

Respondent's other contention is that the pelts of the culled breeders are not "livestock held by the taxpayer for * * * breeding * * * purposes" and when the breeders were killed and pelted they did not retain the character of section 117(j)(1) or section 1231 property. On this question the reasoning of the court in the *Cook* case is also convincing and persuasive and is applicable here. In rejecting the same contention the court stated:

The evidence establishes that sound business practice requires the culling of large numbers of mink from the breeding herd each year, and that the only appreciable market for these culls is the pelt market. In order that the culls be put in a marketable condition they must be killed and pelted. Yet, the [respondent] maintains in so rendering the animal what was admittedly section 117(j)(1) property becomes something else. [Respondent's] construction of the statute, in which he draws support from Revenue Ruling 57-548, penalizes sound business methods by ignoring the economic realities of the mink farming industry. Resort to the statute must be had to see whether it requires this result.

The statute is not ambiguous; the congressional intent is clear; and rulings of the Treasury Department which purport to construe the statute are to be disregarded when their effect is to deny capital gains treatment to a taxpayer otherwise within the statute [*Albright* v. *United States, supra*]. The 1951 amendment which specifically includes "livestock * * * held by the taxpayer for draft, breeding, or dairy purposes" in the definition of "property used in the trade or business" was enacted to remove "uncertainties" in the application of the statute to livestock used in the trade or business created by rulings of the Treasury Department. The legislative history of the amendment indicates congressional approval of the Albright decision. The history further shows that the term "livestock" is to be given a broad and not a narrow construction. [H. Rept. No. 585, 82d Cong., 1st Sess., vol. 2, U.S. Cong. & Adm. Serv., p. 1813; S. Rept. No. 781, 82d Cong., 1st Sess., vol. 2, U.S. Cong. & Adm. Serv., pp. 2011, 2012.]

It is undisputed that the culled breeder mink here involved meet all the conditions imposed by section 117(j)(1). [Respondent's] construction of the statute, in effect, adds thereto the further condition that the property be sold in the same form as that in which it was held by the taxpayer. Nothing in the statute permits such inference unless it is the word "livestock" itself. Yet the history of the amendment shows that it was not intended to restrict the ambit of the existing statute, but to remove restrictions in its application resulting from Treasury Department rulings.

We conclude, as did the District Court, that respondent's determination that the proceeds of the sale of pelts of culled breeder mink were ordinary income is not in accord with a reasonable interpretation and application of the statute and in its operative effect is contrary to the intent, purpose, and requirements of the said sections 117(j) and 1231 of the 1939 and 1954 Codes, respectively.

Because of the other adjustments agreed upon by the parties, recomputation of the deficiencies will be required.

*Decision will be entered under Rule 50.*