**CEDARBURG FOX FARMS, INC.,**
**Plaintiff-Appellant,**

v.

**UNITED STATES of America,**
**Defendant-Appellee.**

**CEDARBURG FOX FARMS, INC.,**
**Plaintiff-Appellee,**

v.

**UNITED STATES of America,**
**Defendant-Appellant.**

Nos. 13017, 13018.

United States Court of Appeals
Seventh Circuit.

Nov. 2, 1960.

Rehearing Denied in No. 13018
Dec. 1, 1960.

Harvey W. Peters, Milwaukee, Wis., for taxpayer.

Charles K. Rice, Lee A. Jackson, Dept. of Justice, Washington, D. C., Edward G. Minor, U. S. Atty., Milwaukee, Wis., Robert N. Anderson, Lloyd J. Keno, Attys., Dept. of Justice, Washington, D. C., for United States.

Before SCHNACKENBERG and CASTLE, Circuit Judges, and PLATT, District Judge.

PLATT, District Judge.

Cedarburg Fox Farms Inc., and the Government have appealed from the judgment entered by the district court in a suit to obtain a refund on the taxpayer's income tax for the year 1944. The taxpayer has appealed from the decision of the district court holding that the taxpayer in determining depreciation upon foxes used for breeding purposes and held by it for more than six months must consider the salvage value of the pelts. The taxpayer concedes that it could establish no deduction for breeder foxes if the salvage value of the pelts had to be considered. The Government has appealed from the district court's decision that the taxpayer is entitled to treat the amount received from the sale of pelts of these foxes kept for breeding purposes as capital gains.

The facts were stipulated by the parties and will not be repeated here since they are clearly set forth in the decision of the district court in Cedarburg Fox Farms, Inc. v. United States, D.C.E.D. Wis.1959, 176 F.Supp. 570.

The taxpayer contends that § 23 of Internal Revenue Code of 1939, 26 U.S.C.A. § 23, which is applicable, does not provide for payment of income tax on the amount received for salvage. Section 23 reads in part as follows:

"Deductions from gross income.
"In computing net income there shall be allowed as deductions:

\* \* \* \* \* \*

"(l) Depreciation.—A reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—

"(1) of property used in the trade or business, or

"(2) of property held for the production of income. \* \* \*"

The taxpayer further relies in its contention on Regulations 111 under the Internal Revenue Code of 1939, Sec. 29.-23(1)-10. Depreciation in case of farmers.—

"A reasonable allowance for depreciation may be claimed on farm

buildings * * * and other physical property. A reasonable allowance for depreciation may also be claimed on livestock acquired for * * * breeding * * * purposes, unless they are included in an inventory used to determine profits in accordance with section 29.22(a)–7. Such depreciation should be based on the cost or other basis and the estimated life of the livestock. If such livestock be included in an inventory no depreciation thereof will be allowed, as the corresponding reduction in their value will be reflected in the inventory. (See also sections 29.23(a)–11 and 29.23(e)–5.)"

The taxpayer argues that the "command" of the regulations "is simple and not ambiguous," and since there is no reference to salvage value, depreciation is to be computed solely on the basis of the cost of the estimated lives of the livestock, without taking into consideration the amount received for salvage. The failure to . specifically mention salvage value in this regulation, or in the statute, does not change the meaning of depreciation. The taxpayer completely ignores Section 29.23(1)–1 of the Treasury Regulations 111 which was applicable to the year 1944. It provides:

"Depreciation.—A reasonable allowance for the exhaustion, wear and tear, and obsolescence of property used in the trade or business, or treated under section 29.23(a)–15 as held by the taxpayer for the production of income, may be deducted from gross income. For convenience such an allowance will usually be referred to as depreciation, excluding from the term any idea of a mere reduction in market value not resulting from exhaustion, wear and tear, or obsolescence. The proper allowance for such depreciation is that amount which should be set aside for the taxable year in accordance with a reasonably consistent plan (not necessarily at a uniform rate), whereby the aggregate of the amounts so set

aside, plus the salvage value, will, at the end of the useful life of the depreciable property, equal the cost or other basis of the property determined in accordance with section 113. * * *"

This regulation expressly mentions depreciation on the basis of salvage value. Depreciation, whether referred to in the statute or in a regulation, is definitely a reasonable allowance for exhaustion, wear and tear, and is not inserted in the statute to make a profit for the taxpayer, but is used by the farmer or in any business to determine net income. The Supreme Court interpreted the meaning of section 23 and Regulations 111, section 29.23(1)–1 in Massey Motors, Inc. v. United States, 364 U.S. 92, at page 93, 80 S.Ct. 1411, at page 1413, 4 L.Ed.2d 1592:

"We have concluded that the reasonable allowance for depreciation of the property in question used in the taxpayer's business is to be calculated over the estimated useful life of the asset while actually employed by the taxpayer, applying a depreciation base of the cost of the property to the taxpayer less its resale value at the estimated time of disposal."

at page 96, 80 S.Ct. at page 1414:

"It was the design of the Congress to permit the taxpayer to recover, tax free, the total cost to him of such capital assets; hence it recognized that this decrease in value—depreciation—was a legitimate tax deduction as business expense."

and at page 101, 80 S.Ct. at page 1416:

"Congress intended by the depreciation allowance not to make taxpayers a profit thereby, but merely to protect them from a loss. The concept is, as taxpayers say, but an accounting one and, we add, should not be exchangeable in the market place. Accuracy in accounting requires that correct tabulations, not artificial ones, be used. Certainly it is neither accurate nor correct to carry in the depreciation equation a value of nothing as salvage on the

resale of the automobiles, when the taxpayer actually received substantial sums therefor."

Plainly the Supreme Court in these statements has refuted the taxpayer's position that the salvage value should not be considered in determining depreciation. We see no reason why a different rule would be applicable to farmers or fox breeders than to any other business. There is no indication by Congress in section 23 or in the regulations by the Secretary of the Treasury that the farmer should have a windfall from the amount received for the salvage from breeder animals. Cf. Koelling v. United States, D.C.Neb. 1957, 171 F.Supp. 214, 224–225. It is only reasonable and good sense to conclude that the salvage value, the amount received for the pelts of the breeding foxes, should be considered in determining depreciation.

■ We come now to the contention of the Government that the amount so received for these pelts should be treated as ordinary income and not as capital gains. To determine this question the following statutes are involved.

Section 117 Internal Revenue Code of 1939, as amended by the Revenue Acts of 1942 and 1951. Capital gains and losses.

"(a) Definitions.—As used in this chapter—

"(1) Capital assets.—The term 'capital assets' means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business; or property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23(*l*) * * *."

* * * * * *

"(j) Gains and losses from involuntary conversion and from the sale or exchange of certain property used in trade or business.—

"(1) Definition of property used in the trade or business.—For the purpose of this subsection, the term 'property used in the trade or business' means property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (1) held for more than 6 months. * * * Such term also includes livestock, regardless of age, held by the taxpayer for * * * breeding * * *."

Section 324, Revenue Act of 1951:

Section 324, Sales of Livestock

"Section 117(j) (1) is hereby amended by adding at the end thereof the following new sentences: 'Such term also includes livestock, regardless of age, held by the taxpayer for draft, breeding, or dairy purposes, and held by him for 12 months or more from the date of acquisition. Such term does not include poultry.' The first sentence added to section 117(j) (1) by the amendment made by this section shall be applicable with respect to taxable years beginning after December 31, 1941, except that the extension of the holding period from 6 to 12 months shall be applicable only with respect to taxable years beginning after December 31, 1950. * * *"

There was also a regulation which was effective in 1944 which provided as follows:

Sec. 29.117–7 (As amended by T.D. 5970, Jan. 6, 1953).

"(c) Livestock held for draft, breeding, or dairy purposes.—For the purpose of this section, the term 'livestock' shall be given a broad, rather than a narrow, interpretation and includes cattle, hogs, * * * fur bearing animals, and other mammals. * * *

"The determination whether or not livestock is held by the taxpayer for \* \* \* breeding \* \* \* purpose depends upon all of the facts and circumstances in each particular case. The purpose for which the animal is held is ordinarily shown by the taxpayer's actual use of the animal. However, \* \* \* breeding \* \* \* purpose may be present in a case where the animal is disposed of within a reasonable time after its intended use for such purpose is prevented by accident, disease, or other circumstances. An animal held for ultimate sale to customers in the ordinary course of the taxpayer's trade or business may, depending upon the circumstances, be considered held for \* \* \* breeding \* \* \* purpose. An animal is not held by the taxpayer for \* \* \* breeding \* \* \* purpose merely because it is suitable for such purpose or because it is held by the taxpayer for sale to other persons for use by them for such purpose. Furthermore, an animal held by the taxpayer for other purposes is not considered to be held for \* \* \* breeding \* \* \* purpose merely because of a negligible use of the animal for such purpose or because of the use of the animal for such purpose as an ordinary or necessary incident to the purpose for which the animal is held."

It is explicit to us that the statute and regulations plainly include the breeder foxes in the instant case. The breeder foxes were livestock kept for more than six months, not for sale to customers, and were used in the taxpayer's business to produce additional foxes to be processed into pelts. This was not the incidental use of the animals but their principal use in the business.

The Government contends that because the taxpayer sold the pelts of the breeder foxes, after holding them for more than six months, the amounts so received should be ordinary income. Furthermore, the Government argues that the taxpayer acquired the breeder foxes "at no cost by breeding them itself" and "[suffered] no hardship in replacing its culled breeders." The taxpayer did process the breeder foxes for their pelts at the end of the period for which they were held, but the breeder foxes were not included in its stock in trade and were not held primarily by the taxpayer for sale to customers in the ordinary course of its business. The breeder foxes represented capital investment. Scofield v. Lewis, 5 Cir., 1958, 251 F.2d 128, 132. The production of young foxes was necessary to produce pelts. The fact there was a salvage value from processing does not change the character of the breeder foxes, or the primary purpose for which they were held.

The capital gains treatment has been applied to the hog farmer. Albright v. United States, 8 Cir., 1949, 173 F.2d 339. The facts in the instant case are analogous to the hog farmer selling the old sow for slaughter. The hog farmer is in the business of producing live animals for slaughter, whereas the fox breeder is in the business of producing pelts. We see no difference in applying the capital gains treatment to the hog farmer who sells his sows and the fox breeder who sells pelts from his breeder foxes. The breeder foxes were produced from the herd of foxes just as the hog farmer could produce his sows from his herd.

In Cook v. United States, D.C.Minn. 1958, 165 F.Supp. 212, affirmed 8 Cir., 270 F.2d 725, section 117(j) (1) was held applicable to the mink industry, but the Government insists that because in that case it was stipulated there was no sale for the old breeder mink, and in the instant case there was no such stipulation, this case is not a precedent here. The processor who buys foxes for pelts would pay on the amount received for the pelts as ordinary income whether it processed the pelts from young foxes or breeder foxes. But the taxpayer, or breeder of foxes, should not be penalized because he is in the business of producing pelts when in fact the breeder foxes were held by it for five years to produce more foxes and

thereby more pelts. The realtor who holds rental property for rent, and the investment house which holds certain of its investments not for sale to customers but for their dividends, are permitted to use the capital gains advantage when they sell the rental property or the investments. Farry v. Commissioner, 1949, 13 T.C. 8; Carl Marks & Co. v. Commissioner, 1949, 12 T.C. 1196. Section 117(j) (1) was held applicable to the fox and mink industry although the breeder foxes and minks were processed and the pelts sold by the taxpayer. Herbert A. Nieman & Co. v. Commissioner, 1959, 33 T.C. 451; Ben Edwards v. Commissioner, 1959, 32 T.C. 751. (Appeal dismissed CA–8.) We conclude that the district court properly held that the amount received from pelts of breeder foxes was a capital gain as provided by section 117(j) (1) of the Internal Revenue Code of 1939, as amended.

For the reasons stated the decision of the district court is

Affirmed.